JOSEPH A. KAMALI, Plaintiff-Appellee, *v.*
HAWAIIAN ELECTRIC COMPANY, INC., a
Hawaii corporation, Defendant and Third-
Party Plaintiff-Appellant, *v.* TANJI HOUSE
MOVERS, LTD. and NORMAN G. TAGATA, Third-
Party Defendants-Appellees

No. 5123

DECEMBER 19, 1972

MARUMOTO, ACTING C.J., ABE,
LEVINSON AND KOBAYASHI, JJ., AND
CIRCUIT JUDGE LANHAM IN PLACE OF
RICHARDSON, C.J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by Hawaiian Electric Company,
Inc., the defendant and third-party-plaintiff in this case,

from a jury verdict rendered against it and in favor of Joseph A. Kamali, the plaintiff-appellee, and Tanji House Movers, Ltd., the third-party-defendant-appellee.

## FACTS

On January 11, 1966, Tanji House Movers, Ltd. (hereinafter referred to as Tanji), was engaged in moving a house down Hekaha Street in Honolulu, Hawaii. On January 11 and 12, 1966, Tanji procured a house moving permit from the Joint Pole Committee as required by Section 15-21.12 (3)(d) of the Traffic Code of the City and County of Honolulu (1969). The plaintiff, Joseph A. Kamali (hereinafter referred to as Kamali), was an employee of Tanji and was stationed on the top of the house to watch for low hanging wires or other obstructions.

The defendant and third-party-plaintiff, Hawaiian Electric Company, Inc. (hereinafter referred to as Hawaiian Electric), owned and maintained three 12,000 volt uninsulated electrical wires and a common neutral wire which crossed Hekaha Street.

While the house was moving down Hekaha Street, Kamali touched the above mentioned wires and suffered severe electrical burns. The above mentioned wires were two and three feet lower than the height requirement prescribed by the Public Utilities Commission.

Kamali brought action against Hawaiian Electric for the negligent construction and maintenance of its electric wires. Hawaiian Electric then filed a third-party complaint against Tanji and Norman G. Tagata (the driver of the truck which pulled the house and flat bed trailer).

Hawaiian Electric has raised a number of issues on appeal but we believe only the following merit consideration:

1. Did the trial court err in partially striking portions of Hawaiian Electric's answers to Kamali's inter-

rogatories after they had already been admitted in evidence?

2. Did the trial court err in dismissing Hawaiian Electric's claim for indemnity against Tanji? Hawaiian Electric urges two grounds:

   a. Indemnity based upon Tanji's independent duty to Hawaiian Electric; and
   b. Indemnity based upon express contract between Hawaiian Electric and Tanji.

3. Did the trial court err in submitting the question of proximate cause to the jury?

The trial court ruled that the Joint Pole permit did not constitute an indemnity contract as a matter of law and that Tanji was not liable thereunder. The jury returned a special verdict in the amount of $150,000 in favor of Kamali and specifically found:

(1) That Hawaiian Electric was negligent and that its negligence was a proximate cause of the accident; and

(2) That Tanji was negligent toward Kamali but its negligence was not a proximate cause of the accident.

## DID THE COURT ERR IN PARTIALLY STRIKING PORTIONS OF HAWAIIAN ELECTRIC'S ANSWERS TO KAMALI'S INTERROGATORIES AFTER THEY HAD ALREADY BEEN ADMITTED IN EVIDENCE?

We agree with Kamali that the rules for admission of evidence apply to written answers to interrogatories when they are sought to be introduced at trial. However, Kamali claims that the exhibits attached and referred to by Hawaiian Electric's answers to Kamali's interrogatories on July 9, 1968 (hereinafter referred to as answers) were not part of the answers. Kamali alleges that the subsequent admission of the answers into evi-

dence at trial did not include the exhibits to the answers.

Prior to the admission of the answers, Kamali was informed by Hawaiian Electric that the exhibits attached thereto were part of the answers and would go into evidence. Kamali did not object when the court ruled that the answers of July 9, 1968, were already in evidence and that all exhibits thereto were part of the answers and also in evidence. Kamali only later objected to portions of Exhibit 5 to Hawaiian Electric's answers on the basis that they were not part of the answers previously admitted in evidence, and that they were incompetent as hearsay. However, the trial court overruled Kamali's objections.

We hold that the exhibits attached and referred to in Hawaiian Electric's answers to interrogatories were part of such answers and admitted in evidence.

The question remains, however, whether the trial court, on its own motion, may partially strike evidence which has already been admitted without objection. It was admitted by the parties that the portions stricken constituted hearsay statements. Professor McCormick in his treatise on evidence, HANDBOOK OF THE LAW OF EVI-DENCE (1972), states in § 55, p. 129:

> [A] party's failure to object usually waives the objection and precludes the party from complaining if the evidence is let in. But the failure by the party does not of itself preclude the trial judge from excluding the evidence on his own motion if . . . the evidence is incompetent, and he considers that the interests of justice require the exclusion of the testimony.

Here, the stricken evidence did not materially prejudice Hawaiian Electric as the exhibits were neither read to the jury nor did they go to the jury room. The fact that the evidence stricken was helpful to Hawaiian Electric and detrimental to Kamali is not relevant.

Thus, we are of the opinion that the trial court acted within its discretion in striking the hearsay statements already admitted into evidence without objection.

## DOES THE EXCLUSIVE LIABILITY PROVISION OF HRS § 386-5 PRECLUDE HAWAIIAN ELECTRIC'S CLAIM FOR CONTRIBUTION?

Initially, it should be noted that though Hawaiian Electric's third-party-complaint is couched in terms of indemnity, portions of the complaint are in substance claims for contribution as they are premised on the assumption that, if Tanji and Hawaiian Electric are joint tortfeasors, then Tanji was primarily negligent and Hawaiian Electric was secondarily negligent. Implicit here is the allegation that Tanji's negligence was a proximate cause of the accident and that Tanji is liable in tort despite the exclusive liability provisions of HRS § 386-5 which provides:

> §386-5 *Exclusiveness of right to compensation.* The rights and remedies herein granted to an employee or his dependents on account of a work injury suffered by him *shall exclude all other liability of the employer to the employee,* his legal representative, spouse, dependents, next of kin, *or anyone else entitled to recover damages from the employer,* at common law or otherwise, on account of the injury. (Emphasis added.)

This court has not in the past considered the possibility of contribution under the terms of HRS § 386-5. The great majority of jurisdictions having exclusive liability provisions exactly like or very similar to HRS § 386-5 have held that an employer whose concurring negligence contributed to an employee's injury cannot be sued or joined by a defendant-third-party-plaintiff as a joint tortfeasor. LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 76.21, p. 235 (1970).

This position is compelling, particularly in light of a clear expression of legislative intent to absolve the employer of all liability save that imposed by statute. The

purpose of such legislation is to achieve certainty — certainty that an employee will be compensated for all work injuries regardless of his negligence or fault; and certainty with regard to the amount for which the employer shall be liable. The effect is a compromise where the chance that an employee may not recover at all and the chance that an employer will be charged with an excessive judgment are eliminated.

The position of the majority of jurisdictions is that to allow contribution in the face of the exclusive liability provision of the Workmen's Compensation Law would be to strip the employer of the very protections intended by the statute.

However, a minority of jurisdictions have adopted a theory of limited contribution against an employer which does not subvert the policy of the Workmen's Compensation Law. LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 76.22, p. 238 (1970). Basic to this position is the proposition that it is unfair for one joint tortfeasor to bear the entire loss merely because the other joint tortfeaser is an employer. Since full contribution would obviously render an employer's protection illusory, limited contribution is allowed up to the amount for which the employer would have been liable under the Workmen's Compensation Law.

The policy underlying the Workmen's Compensation Law and the principles of contribution among joint tortfeasors were reconciled in *Newport Air Park, Inc.* v. *United States*, 293 F. Supp. 809 (D.R.I. 1968), where the court adopted the minority position of limited contribution and stated at 815:

(1) it preserves the economics of the compensation system;

(2) it effectuates the policy of contribution which the passage of the uniform law [of contribution] suggests;

(3) it harmonizes the compensation law with the law of contribution and

(4) it protects the non-employer tortfeasor from the possible gross inequity of carrying the whole liability for wrongs caused in perhaps major part by the employer tortfeasor.

However, as equitable as the minority position is, HRS § 386-5 clearly and unequivocally precludes all contribution by a third party against an employer on the theory that the employer was a joint tortfeasor. The adoption of any theory allowing contribution is a situation for legislative consideration.

## DOES THE EXCLUSIVE LIABILITY PROVISION OF HRS § 386-5 PRECLUDE HAWAIIAN ELECTRIC'S CLAIM FOR INDEMNITY?

Though the language of HRS § 386-5 seems to limit all liability on the part of an employer, we are of the opinion that the exclusive liability provision precludes only those actions which arise "on account" of the employee's injury. A third party claim for indemnity is not based on the employee's injury but is for reimbursement based upon contract or some other independent duty existing between indemnitor and indemnitee. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation,* 350 U.S. 124 (1955).

Hawaiian Electric alleges that it is entitled to indemnity from Tanji on two legal grounds:

(1) The provisions of the Joint Pole permit obtained by Tanji as required by law, constituted an express contract of indemnity by Tanji.

(2) Tanji owed an independent duty to indemnify Hawaiian Electric for any loss incurred in the course of the house moving operations.

In fact, all of Hawaiian Electric's claims for indemnity are, by definition, independent of any duty owed to

Kamali, and arise from the alleged relationship between Hawaiian Electric and Tanji. In essence, Hawaiian Electric claims that this independent duty is based on (1) express contract and (2) implied agreement to indemnify, (3) special relationship between Tanji and Hawaiian Electric, and (4) primary negligence of Tanji and secondary negligence of Hawaiian Electric.

We now reach Hawaiian Electric's first theory of indemnity. Section 15-21.12 (3)(d) of the Traffic Code of the City and County of Honolulu (1969) requires that no object over 13 feet in height may be moved or transported over any public highway without a permit obtained from the Joint Pole Committee. Hawaiian Electric claims that it is this permit that forms the basis for Tanji's express contractual agreement to indemnify Hawaiian Electric for Kamali's injuries.

The permit[1] is a special service application for house moving or heavy equipment. Mr. Irwin W. C. Wong, secretary of the Joint Pole Committee, who was charged with the duty of issuing the permits, testified that if a house to be moved was 18 feet or below in height, then approval was automatically given and no further action was taken. However, if a house exceeded 18 feet in height Mr. Wong referred the application to the members of the Joint Pole Committee. It is then that the special services referred to in the permit are rendered by the members of the committee to check the proposed route of transfer for possible obstructions. The permit states:

> If the overall height of the building (including trailer and timber) exceeds 18 feet, the route will be checked by a representative of the Hawaiian Telephone Company, for which additional time should be allowed.

> In case lines must be raised or poles relocated to pro-

---

[1]In fact two permits were procured to move the house in question on two separate days. They will be considered as one permit for purposes of this section.

vide clearance, the member companies reserve the right to demand full payment for such special work in advance, and such additional time as may be required to plan and perform the work.

Should an obstruction exist, it is obvious from the above that either an alternative route of transfer is prescribed or steps to remove the obstruction are undertaken. The language of the permit showing Tanji's agreement is as follows:

For which service I/we [Tanji] agree (s) to pay all charges made by the respective Companies indicated [Hawaiian Telephone Company and Hawaiian Electric] and to assume full responsibility for any damages to any of the above utility's property and/or life in connection with our operation under this permit.

Though the evidence indicated the height of the house including trailer and timber to be over 18 feet, Tanji specified such height to be exactly 18 feet in the permit. The result was that, in accordance with the policies of the Joint Pole Committee, summary approval was granted and no special services were rendered.

Tanji argues that, even if a contract of indemnity did exist, it was void for lack of consideration as no special services were rendered. Be this as it may, Tanji cannot argue lack of consideration as it was its own misstatement of the height in question that caused no special services to be rendered.

Assuming that the Joint Pole permit is a contract, we are of the opinion that the language of the permit did not constitute an indemnity contract as a matter of law. We recognize that contracts of indemnity are strictly construed, particularly where the indemnitee claims that it should be held safe from its own negligence. *Bagwell* v. *South Louisiana Electric Co-operative Association,*

228 So.2d 555 (La. 1969) ; *Buford* v. *Sewerage and Water Board*, 175 So. 110 (La. App. Orl. 1937) .

The language in the above permit does not amount to a clear and unequivocal assumption of liability by Tanji for Hawaiian Electric's negligence. In absence of such requisite specificity, the trial court ruled correctly that the Joint Pole permit did not constitute an indemnity contract as a matter of law.

The Hawaiian Electric further argues that, even if no special services were rendered, Tanji is nevertheless obligated under the alleged indemnity provision because (1) Tanji was required by law to obtain a permit; and (2) every permit is a special service application and contains an indemnity clause. These arguments fail to show why Tanji should be obligated to indemnify Hawaiian Electric.

Hawaiian Electric's other theories for indemnity are not properly before this court. Though Hawaiian Electric claims that its entire third party complaint was dismissed, the trial court merely ruled that the Joint Pole permit did not constitute an indemnity contract as a matter of law.

Though we recognize that a third party is entitled to sue an employer covered by Hawaii's Workmen's Compensation Law for indemnity based on breach of an independent duty, Hawaiian Electric has failed to state such a claim.

## SUBMISSION OF THE QUESTION OF PROXIMATE CAUSE TO THE JURY.

The jury was given the following form of verdict to resolve:

### VERDICT

The jury must answer ALL of the questions, unless otherwise indicated. Answer the questions in numerical order, starting with question number 1, because an earlier answer may excuse you from an-

swering a later question. Answer all questions "yes" or "no", unless otherwise indicated. If you do not understand any question, please communicate with the Court in writing.

1 (a). Was Hawaiian Electric negligent toward Joseph A. Kamali? — *Yes*

1 (b). If your answer to question 1 (a) is "yes" was Hawaiian Electric's negligence a proximate cause of the accident? — *Yes*

If your answer to 1 (a) and 1 (b) are "yes" go on; if your answer to 1 (a) or 1 (b) is "no", stop here and sign this verdict form.

2 (a). Was Joseph A. Kamali contributorily negligent? — *No*

2 (b). If your answer to question 2 (a) is "yes" was Joseph A. Kamali's contributory negligence a proximate cause of the accidents? —

3. Was Hawaiian Electric guilty of willful and wanton misconduct toward Joseph A. Kamali? — *No*

4. Did Joseph A. Kamali assume the risk of the injuries he received? — *No*

Answer questions 5 and 6 if you answered 2 (a) or 2 (b) "no" or your answer to question 3 is "yes". However, if your answer to question 4 is "yes" stop here and sign this verdict form.

5. Joseph A. Kamali is entitled to the following amount:

    Compensatory Damages    $150,000.00

    Punitive Damages    $   0

6 (a)  Was Tanji House Movers, Ltd. negligent toward Joseph A. Kamali?  *Yes*

6 (b)  If your answer to question 6 (a) is "yes" was Tanji House Movers, Ltd.'s negligence a proximate cause of the accident?  *No*

We, the Jury in the above-entitled cause, return the foregoing verdict.

DATED: Honolulu, Hawaii, this 3 day of December, 1970.

/s/ Herbert Y. C. Ching

FOREMAN

The jury specifically found that Tanji's negligence was not a proximate cause of Kamali's injuries.

Hawaiian Electric did not object to the submission of the special verdict form to the jury. Neither did Hawaiian Electric move for a judgment notwithstanding the verdict. *See* HRCP 50 (b). Hawaiian Electric is thus foreclosed and has no standing to now claim that it is not primarily negligent and that the jury erred in its verdict.

Based on the record we see no reason to set aside the jury's verdict.

Judgment is affirmed.

*Gary N. Hagerman* (*Jenks, Kidwell, Goodsill* and *Anderson* of counsel) for defendant and third-party plaintiff-appellant.

*Clarence Y. Shimamura* for plaintiff-appellee.

*Albert Gould* (*Cobb* and *Gould* of counsel) for third-party defendants-appellees.

CONCURRING OPINION OF ABE, J., WITH WHOM LANHAM, J., JOINS

While I concur with this court's decision, I do not believe that if should rule on the issue of indemnity.

This court has stated that "[a]ppellate courts will not consider any question not necessary or relevant to the final determination of the appeal." *Glover* v. *Fong,* 42 Haw. 560, 577 (1958) ; *see also In re Brandt,* 25 Haw. 51, 52 (1919). Here, I believe the opinion of this court transgresses this general rule.

On appeal in this court, Hawaiian Electric's sole claim for indemnity against Tanji was based upon an alleged agreement entered into by Hawaiian Electric and Tanji. On this issue this court holds: "Assuming that the Joint Pole permit is a contract, we are of the opinion that the language of the permit did not constitute an indemnity contract as a matter of law."

Now, having reached this conclusion, it becomes unnecessary for this court to decide whether a claim for indemnification lies outside the scope of the exclusive liability provisions of HRS § 386-5.

In my opinion, this issue raises the following question: "Did the compensation acts, in conferring immunity on the employer from common-law suits, mean to do so only at the expense of the injured employee, or also at the expense of outsiders?" 2 LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 76.52.

The determination of this issue involves consideration of legislative policy involved in a complex statutory scheme. As I had stated above, in this appeal it is not necessary to decide this policy question; and, therefore, I believe that this issue should be left for future determination in a proper case.