TERESA A. ESPANIOLA, Individually and as Special Administratrix of the Estate of Don P. Espaniola, Deceased, and LEOLANI A. ESPANIOLA and DON P. ESPANIOLA, JR., minors, by their next friend, TERESA A. ESPANIOLA, and MR. AND MRS. MOSES ESPANIOLA, Plaintiffs, *v.* CAWDREY MARS JOINT VENTURE, a Partnership, TEDWILL, INC., MOLOKAI ELECTRIC COMPANY, LIMITED, FRITZ, INC., FRITZ OF HAWAII, INC., DOE CORPORATIONS 3-10, and JOHN AND JANE DOES 1-50, Defendants and Third-Party Plaintiff-Appellant, *v.* JOE E. LEMING, Third-Party Defendant-Appellee

NO. 9680

(CIV. NO. 4551(2))

SEPTEMBER 26, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

172

OPINION OF THE COURT BY NAKAMURA, J

"The . . . remedies . . . granted [by the Workers' Compensation Law] to an employee or his dependents on account of a work injury . . exclude all other liability of the employer to the employee, his legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer . . . ." Hawaii Revised Statutes (HRS) § 386-5 (1976).[1] The question is whether this "exclusive liability" clause precludes the assertion of a contractual claim for indemnity against an employer, who has paid benefits under the law on account of a fatal work injury, by a third-party tortfeasor from whom damages are sought for the same injury. The Circuit Court of the Second Circuit ruled the claim for indemnity was barred by virtue of HRS § 386-5. But we conclude it was not and vacate the award of summary judgment to the employer.

I.

Joe E. Leming, a building contractor, entered into a contract with Cawdrey-Mars Joint Venture, the general contractor, to perform the

---

[1]HRS § 386-5, in its entirety, reads:

Exclusiveness of right to compensation. The rights and remedies herein granted to an employee or his dependents on account of a work injury suffered by him shall exclude all other liability of the employer to the employee, his legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury

rough framing work for the Paniolo Hale, a condominium apartment project on Molokai. Leming agreed therein to protect and indemnify the general contractor against any loss or damage sustained by anyone arising from his negligence.[2] Don P. Espaniola, an apprentice carpenter employed by the subcontractor, suffered a fatal work injury at the project site when he fell from the roof of a building under construction after he accidentally backed into a high-tension wire. His dependents therefore became entitled to benefits under the Workers' Compensation Law. Since the statute also allows dependents of a deceased employee to recover damages from someone other than the employer when a fatal injury occurs under circumstances creating a legal liability for damages in the third party,[3] the decedent's surviving spouse, suing as the adminis-

---

[2]The two paragraphs of the subcontract covering the indemnification of the general contractor read as follows:

12. The Sub-contractor shall protect and indemnify said Contractor against any loss or damage suffered by any one arising through the negligence of the Sub-contractor, or those employed by him or his agent or servants; he shall bear any expense which the Contractor may have by reason thereof, or on account of being charged therewith; and if there are any such injuries to persons or property unsettled for, when the work herein provided for is finished, final settlement between the Contractor and Sub-contractor shall be deferred until such claims are adjusted or suitable special indemnity acceptable to the Contractor is provided by the Sub-contractor.

13. The Sub-contractor shall furnish certificates of insurance evidencing that Sub-contractor has placed in force valid insurance covering its full liability under Workmen's Compensation Laws of the State of Hawaii and also Comprehensive Bodily Injury and Property Damage insurance fully protecting Contractor. Insurance shall be in forms and amounts satisfactory to the Contractor and shall be maintained in force until the work is completed. All work covered by this agreement done at the site of construction or in preparing or delivering materials to the said site shall be at the risk of the Sub-contractor alone, and Sub-contractor agrees to indemnify and hold harmless Contractor and the Owner against any claims, actions or demands against them, or either of them, and against any damages, liabilities or expenses, including attorney's fees, for personal injury or death or for loss or damage to property, or any or all of them, arising out of or in any way connected with the performance of this agreement by Sub-contractor.

[3]HRS § 386-8, in relevant part, reads:

When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

tratrix of his estate and on behalf of herself and his minor children, and his parents brought a tort action against the general contractor, the owner-developer of the project (Tedwill, Inc.), the Molokai Electric Company, Limited, and other unidentified defendants.[4]

Cawdrey-Mars and Tedwill answered the complaint by denying they were negligent and filed cross-claims against Molokai Electric; the utility company likewise disaffirmed liability and blamed the other defendants for Don P. Espaniola's death; and when Fritz, Inc., the project's electrical subcontractor, was identified as a defendant, it predictably disclaimed responsibility for the accident and cast the blame for the fatal work accident on the other defendants.

Cawdrey-Mars subsequently filed a third-party complaint seeking contribution from Leming for any damages awardable to the plaintiffs, as well as indemnification for any damages resulting from his negligence. Contribution was sought on grounds that the employer's wilful or wanton conduct was the cause of the employee's death and indemnification was sought pursuant to the contract between the general contractor and the subcontractor. Fritz, Inc. also sought "indemnification, contribution and/or reimbursement" from Leming. Its prayer for indemnification was purportedly "based upon, among other things, common law active and passive negligence." When Leming moved for summary judgments on the third-party complaints, the circuit court awarded him judgment on the claims for contribution based on negligence and for indemnification under the contract but denied him judgment on the claim for contribution premised on allegations of wilful or wanton conduct and on the common law indemnity claim purportedly grounded on active-passive negligence.[5]

---

[4]Fritz, Inc., the electrical subcontractor for the project, was later identified as one of the defendants.

[5]The circuit court's order was couched in these terms:

1. The motion is granted as to all claims made against LEMING based upon contractual indemnity including any and all claims for indemnity arising out of the subcontract between LEMING and CAWDREY-MARS, a copy of which was attached as Exhibit A to the Motion for Summary Judgment filed by LEMING;

2. The motion is granted as to any and all claims for contribution based on the alleged ordinary negligence of LEMING and is denied as to any and all claims for contribution based on the alleged willful and wanton misconduct of LEMING.

3. The motion is denied with respect to claims for common law indemnity based on active-passive negligence.

Cawdrey-Mars appealed from this order.

The damage claims against Cawdrey-Mars, Tedwill, and Fritz, Inc. were either settled or dismissed, and the plaintiffs proceeded to trial against the remaining defendant. However, they also reached settlement with Molokai Electric before its completion. Cawdrey-Mars then perfected a timely appeal from the order awarding Leming summary judgment on the claims it asserted for contribution and indemnification. But the arguments addressed to this court deal only with the issue of Leming's contractual obligation to protect and indemnify Cawdrey-Mars "against any loss or damage suffered by any one arising through the negligence of the Sub-contractor."

## II.

### A.

Our first brush with the issue posed for decision was in *Kamali v. Hawaiian Electric Co.,* 54 Haw. 153, 504 P.2d 861 (1972), where an employee of a house moving contractor was severely burned when he unintentionally touched several uninsulated high-tension lines while standing on the roof of a house that was being hauled down a public street on a trailer. The injured worker received workers' compensation benefits but chose also to seek damages for the injury. He charged Hawaiian Electric Company, the owner of the electric lines, was responsible for the mishap, averring it was negligent in constructing and maintaining the wires.

The utility company in turn brought suit against the house mover and the driver of the truck that pulled the trailer. The third-party complaint sought contribution for damages from the third-party defendants on averments that they were joint tortfeasors. It sought indemnification on the basis of the permit obtained by the house mover from the Joint Pole Committee in accord with an ordinance of the City and County of Honolulu and on allegations that the house mover owed Hawaiian Electric an independent duty of indemnity. Though we saw equity in a rule of limited contribution followed by a minority of states, we concluded the clear language of HRS § 386-5 precluded contribution "on the theory that the employer was a joint tortfeasor." *Id.* at 159, 504 P.2d at 865. "The adoption of any theory allowing contribution," in our opinion, was "a situation for legislative consideration." *Id.*

We did not view the indemnity claim in the same light. Citing *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124 (1955),

we said an employer covered by the Workers' Compensation Law could still be liable to a third party if he assumed liability under an indemnity agreement. *Kamali,* 54 Haw. at 159, 504 P.2d at 865.[6] Still, we recognized that such agreements should be construed strictly. And upon reviewing the permit upon which Hawaiian Electric relied, we ruled the language in the permit did "not amount to a clear and unequivocal assumption of liability" by the house mover. *Id.* at 162, 504 P.2d at 866.

Thus, the rule established by *Kamali* is that "even where a third party is found negligent, he can be indemnified by the employer provided there has been a 'clear and unequivocal' assumption of liability." *Keawe v. Hawaiian Electric Co.,* 65 Haw. 232, 237, 649 P.2d 1149, 1153 (1982).[7] In the *Keawe* decision we concluded the "hold harmless" clause involved did not "reflect[] the specificity required" to compel indemnification of the third party by the employer. *Id.* at 238, 649 P.2d at 1153.[8] The indemnity clause now before us, however, can hardly be described as being short in specificity.

---

[6]Our full statement in this regard was:

Though the language of HRS § 386-5 seems to limit all liability on the part of an employer, we are of the opinion that the exclusive liability provision precludes only those actions which arise "on account" of the employee's injury. A third party claim for indemnity is not based on the employee's injury but is for reimbursement based upon contract or some other independent duty existing between indemnitor and indemnitee.
54 Haw. at 159, 504 P.2d at 865 (citation omitted).

[7]The rule is consistent with that established by the Supreme Court and in a majority of the states. *See* United States v. Seckinger, 397 U.S. 203 (1970). *See generally* Annot., 100 A.L.R.3d 350, 380-82 (1980); 2A A. Larson, *The Law of Workmen's Compensation* § 76.42 (1983 & Supp. 1984); Soule, *Toward an Equitable and Rational Allocation of Employee Injury Losses in Cases With Third Party Liability,* 46 Ins. Counsel J. 201, 207-08 (April 1979); Comment, *The Effect of Workers' Compensation Laws on the Right of a Third Party Liable to an Injured Employee to Recover Contribution or Indemnity from the Employer,* 9 Seton Hall L. Rev. 238, 243-46 (1978); Larson, *Workmen's Compensation: Third Party's Action Over Against Employer,* 65 Nw. U.L. Rev. 351, 369-71 (1970).

[8]The indemnity clause at issue in *Keawe,* in relevant part, read as follows:

The Contractor [Ahee] shall protect, defend, save harmless and indemnify the Company [HECO], its employees and the public from claims, demands or expenses on account of any injury alleged or real to person or persons or damage alleged or real to property arising out of anything done or omitted to be done under this Contract by the Contractor [Ahee] or any subcontractor or anyone directly employed by either of them.
65 Haw. at 233, 649 P.2d at 1151.

Leming agreed to "protect and indemnify [Cawdrey-Mars] against any loss or damage suffered by any one arising through [his] negligence . . . , or those employed by him or his agent or servants." See *supra* note 2 for the full text of the indemnity clause. He promised to "bear any expense which [Cawdrey-Mars] may have by reason thereof, or on account of being charged therewith." *Id.* We can only conclude "there has been a 'clear and unequivocal' assumption of liability" here. *Keawe,* 65 Haw. at 237, 649 P.2d at 1153.[9]

## B.

But Leming would have us affirm the award of summary judgment in his favor on yet another ground. Indemnity in this case, he urges, "is barred by HRS § 431-453." We do not read the statute to have such effect.

Section 431-453 renders invalid "[a]ny covenant, promise, agreement or understanding in . . . a [construction] contract . . . purporting to indemnify the promisee against liability . . . resulting from the sole negligence or wilful misconduct of the promisee, his agents or employees, or indemnitee."[10] Nothing on its face suggests a subcontractor's promise to indemnify the general contractor against liability resulting from the subcontractor's negligence may be void; HRS § 431-453

---

[9]That Leming may only have been concurrently negligent does not relieve him of the duty of indemnification. For "if an indemnitor is contractually obligated to indemnify for its negligence, it is obligated to indemnify for both its sole and concurrent negligence unless the indemnity contract clearly and unequivocally specifies otherwise." Straub Clinic and Hosp. Inc. v. Chicago Ins. Co., 4 Haw. App. 268, 275, 665 P.2d 176, 180 (1983).

[10]HRS § 431-453, in its entirety, reads:

Construction industry; indemnity agreements invalid. Any covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance or appliance, including moving, demolition or excavation connected therewith, purporting to indemnify the promisee against liability for bodily injury to persons or damage to property caused by or resulting from the sole negligence or wilful misconduct of the promisee, his agents or employees, or indemnitee, is invalid as against public policy, and is void and unenforceable; provided that this section shall not affect any valid workers' compensation claim under chapter 386 or any other insurance contract or agreement issued by an admitted insurer upon any insurable interest under this chapter.

in essence declares invalid a promisor's agreement to indemnify against liability flowing from the negligence or misconduct of persons other than the promisor, his agents or employees. And a departure from the plain and unambiguous language of the statute cannot be justified without a clear showing that the legislature intended some other meaning would be given the language. *Kaiama v. Aguilar,* 67 Haw. 549, 553, 696 P.2d 839, 842 (1985).

The relevant history, however, renders it even clearer that the legislature meant to annul those agreements where contractors bound themselves to indemnify promisees for liability stemming from the neglect of others, not those calling for indemnification of liability resulting from the promisor's negligence. Section 1 of Act 169, Session Laws of Hawaii 1970, the measure that served as the vehicle for the enactment of the language now codified as HRS § 431-453, stated in part: "The purpose of this Act is to invalidate, as against public policy, the prevalent practice in the construction industry of causing contractors to assume liability for the negligence of others by contract."[11] *See also* Hse. Stand. Comm. Rep. No. 420-70, in 1970 House Journal, at 978. The legislative history thus provides no support for a ruling that Leming's agreement to indemnify Cawdrey-Mars violates public policy.

---

[11]Section 1, ch. 169, S.L.H. 1970 read as follows:

SECTION 1. The purpose of this Act is to invalidate, as against public policy, the prevalent practice in the construction industry of causing contractors to assume liability for the negligence of others by contract. Such so-called "hold harmless" agreements are usually incorporated into contracts for construction projects on a "take-it-or-leave-it" basis; (i.e., to take out the necessary insurance or leave the bidding to someone else), and frequently require the contractor, engineer or architect, for example, to undertake assumption of liability for personal injury or property damage even where the same results from the "sole negligence" of persons over whom the indemnitor has no control or right of control. This practice is, and precipitates further, a form of economic coercion by placing contractors in the inequitable position of paying prohibitive insurance premiums, which, if a small contractor cannot afford, precludes him from performing upon a project for which he is otherwise qualified, thereby effectively disenfranchising him under a system of free enterprise. In an economy in which the construction industry contributes so significantly, this practice can only be considered as contrary to the public interest.

This Act does not serve to relieve a contractor from liability when he is negligent; but when he is not, it places the responsibility for injury or damage where it properly belongs, any promise of indemnification notwithstanding.

In the subsequent codification of Act 169 by the Revisor of Statutes, the foregoing section was not codified as part of the Revised Laws of Hawaii.

### III.

Our conclusion that Leming was obligated to protect and indemnify Cawdrey-Mars against damage flowing from his negligence impels a remand of the case for trial of the latter's contractual claim. Though a question concerning the admissibility of evidence relating to the negligence of the employer may not arise here because of the settlement of the plaintiffs' claims for damages, we nevertheless think it advisable to discuss the issue and offer guidance for the trial judges and litigants who are more than likely to encounter the question soon, if not here.

### A.

Problems with respect to the admission of such evidence are bound to arise in view of the holding in *Sugue v. F.L. Smithe Machine Co.,* 56 Haw. 598, 546 P.2d 527 (1976) (per curiam). There, an injured employee who received workers' compensation benefits on account of a work injury sought damages from a third party. Since the plaintiff's exclusive remedy against her employer was that provided by the Workers' Compensation Law, the employer was not a party. Concerned that evidence of the absent employer's negligence might be used to diminish the plaintiff's recovery, we held such evidence was inadmissible. *Sugue* thus dictates that there be two trials in every situation where an injured employee brings a suit for damages and the defendant seeks indemnification therefor from the employer pursuant to the rule in *Kamali* and *Keawe.*

Yet, we have adopted a procedural rule allowing the impleader of third parties to promote judicial efficiency and economy. An object of Rule 14 of the Hawaii Rules of Civil Procedure (HRCP)[12] "is to avoid the situation that arises when a defendant has been held liable to

---

[12]HRCP Rule 14(a) in pertinent part reads:
At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him.

plaintiff and then finds it necessary to bring a separate action against a third individual who may be liable to defendant for all or part of plaintiff's original claim." 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1442 (1971).

> When the rights of all three parties center upon a common factual setting, economies of time and expense can be achieved by combining the suits into one action. Doing so eliminates duplication in the presentation of evidence and increases the likelihood that consistent results will be reached when multiple claims turn upon identical or similar proof. Additionally, the third-party practice procedure is advantageous in that a potentially damaging time lag between a judgment against defendant in one action and a judgment in his favor against the party ultimately liable in a subsequent action will be avoided. In short, Rule 14 is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically.

*Id.* (footnotes omitted). Rather than "effectuating the purposes of Rule 14 ·avoiding circuitry of actions –[*Sugue* tends to] defeat[] that goal." *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 477 (D.C Cir. 1976).

### B.

The decision unfortunately has also been taken by some "to mean that in third party actions, where plaintiff's possibly negligent employer is immunized from suit, and in actions where plaintiff is alleged to have been guilty of contributory negligence, evidence of the causal negligence of the employer or of an absent non-party may not be admitted for any purpose." Miller, *Filling the "Empty Chair"· Some Thoughts About Sugue,* 15 Haw. B.J. 69, 70 (1980). Moreover, as the author states, "*Sugue* is being urged upon trial judges to prevent parties from making the so-called 'empty chair' argument, i.e., from offering evidence of the negligence or other fault of absent non-parties." *Id.* That the opinion serves to render inadmissible any evidence of the negligence of a bankrupt defendant in a products liability suit was also urged upon us recently.

The author of the article concludes *Sugue* as interpreted above "portends great mischief." *Id.* While we do not necessarily endorse the foregoing view, we too are not convinced that *Sugue* prevents as intended a diminution of a plaintiff's verdict in an action for damages

brought by an injured employee against someone other than his employer. It may well have an opposite effect as the author points out. He gives as an example of the opinion's possibly unjust consequences, the following:

> Example 2: Assume that in an accident plaintiff (P) suffers provable damages of $1,000,000 and that if the negligence of all the actors were considered, the causal negligence attributable to P would be 15 percent; to [defendant] D, 10 percent; and to [the third party] X, 75 percent.
>
> Here, the negligence attributable to P is greater than the negligence attributable to D. If P joined D and X in his action P's recovery would be reduced by 15 percent and D and X would be held jointly and severally liable to P in the amount of $850,000. If, however, X were immune from suit, as in *Sugue,* or were a released tortfeasor who was not a party to P's action against D, *and* if the causal fault of non-parties cannot be considered in P's action against D, as *Sugue* suggests, then P will be barred from recovery against D because the negligence attributable to P is "greater than" the negligence of the other party, D, "against whom recovery is sought."

*Id.* at 72.

We have not said the rule in *Sugue* applies in other situations where a negligent actor may be absent. But as Professor Miller states, it would bar recovery in the situation described above if the plaintiff is a worker whose injury was caused in part by his employer's negligence. This would be inconsistent with the public policy of the State since a plaintiff whose negligence is no greater than that of the other negligent actors in the aggregate is allowed to recover damages. *See* HRS § 663-31; *Wong v. Hawaiian Scenic Tours, Ltd.,* 64 Haw. 401, 404, 642 P.2d 930, 932 (1982). In our anxiety to protect the injured worker and to preserve the principle of "exclusive liability," we inadvertently cast the burden of an inequity upon him.

We do not lightly disregard precedent; we subscribe to the view "that great consideration should always be accorded precedent, especially one of long standing and general acceptance." *Olin Mathieson Chemical Corp. v. White Cross Stores, Inc..* 414 Pa. 95, 100, 199 A.2d 266, 268 (1964). Yet, "it doesn't necessarily follow that a rule . . . established by precedent is infallible." *Id.* If unintended injury would result by following the previous decision, corrective action is in order; for we "cannot be unmindful of the lessons furnished by our own consciousness, as well as

by judicial history, of the liability to error [sic] and the advantages of review." 1 T. Cooley, *Constitutional Limitations,* 120 n.2 (8th ed. 1927) (quoting *Pratt v. Brown,* 3 Wis. 532, 538 (1854)). And our review of *Sugue, supra,* tells us we may have been less than wise there.

The decision to set *Sugue* to naught as precedent does not enlarge the scope of an employer's liability for a work injury. The "exclusive liability" provision in the Workers' Compensation Law still precludes the recovery of damages by an employee from his employer. Our decision here is meant to facilitate the determination of causal negligence, not liability, and to permit an injured worker to recover damages from a third party if his negligence is no greater than the combined negligence of the third party and the employer. Evidence of the negligence or other fault of the employer would be admissible to enable the trier of fact to decide the degree of each actor's negligence or other fault. Furthermore, the ruling is intended to obviate the necessity for "duplication in the presentation of evidence and increase[] the likelihood that consistent results will be reached when multiple claims turn upon identical or similar proof." 6 C. Wright and A. Miller, *supra,* § 1442.

The award of summary judgment in favor of Joe E. Leming on Cawdrey-Mars' indemnity claim is vacated, and the case is remanded to the circuit court for further proceedings.

*Richard E. Stifel* (*Lawrence L. Tong* with him on the briefs; *Goodsill, Anderson, Quinn & Stifel,* of counsel) for appellant.

*William A. Bordner* (*Gary L. Miller* with him on the brief; *Burke, Sakai, McPheeters, Bordner & Gilardy,* of counsel) for appellee.