**Daniel KOLE and Anita Kole, Plaintiffs,**

**v.**

**AMFAC, INC., a Hawaii corporation, Kaanapali Royal Associates, a Hawaii general partnership, The Association of Apartment Owners of Kaanapali Royal, a Hawaii general partnership, Roy A. Ellis, III, Jim Gallagher, Mokulani Venture, a Hawaii joint venture, Mid-Continent Builders, Inc., an Illinois corporation, Defendants.**

**Civ. No. 85–0504.**

United States District Court, D. Hawaii.

June 17, 1987.

---

James Krueger, Steven M. Frei, Wailuku, Maui, Hawaii, for Daniel and Anita Kole.

David W. Lo, Victoria I. Chau, Honolulu, Hawaii, for Ass'n of Apartment Owners of Kaanapali Royal.

Stephen B. MacDonald, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for Amfac, Inc.

Libkuman, Ventura, Ayabe & Hughes, Ronald D. Libkuman, Colleen K. Hirai, Honolulu, Hawaii, for Kaanapali Royal Associates. .

Walter Davis, Honolulu, Hawaii, for Jim Gallagher and Mokulani Venture.

Richard C. Sutton, Jr., Honolulu, Hawaii, for Jim Gallagher.

## ORDER GRANTING AMFAC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KAY, District Judge.

Defendant Amfac's Motion for Partial Summary Judgment came on for hearing on May 4, 1987. The court, having reviewed the motion and memoranda in support thereof and in opposition thereto, having heard the oral arguments of counsel, and being fully apprised therein, finds as follows:

Kaanapali Royal is a condominium along the edge of the Kaanapali Golf Course. Amfac allegedly designed and developed the golf course. Kaanapali Royal Associates (KRA) allegedly built and designed the condominium project. The owners of the condominium are represented by the Association of Apartment Owners of Kaanapali

Royal (Association). On January 1, 1985, plaintiff Daniel Kole was struck on the head by a golf ball while using the pool at the Kaanapali Royal Condominium (Parcel).

In the present motion, Amfac asserts KRA and the Association are obligated to defend, indemnify and hold Amfac harmless from any claims for personal injury arising out of stray golf balls landing on the Parcel. Amfac focuses upon four documents: 1) a July 17, 1978 letter of agreement regarding the Kaanapali Club House Condominium Site Sale, 2) a November 1, 1978 letter modifying the July 17, 1978 letter of agreement, 3) a December 1, 1978 Warranty Deed, and 4) a November 19, 1980 Kaanapali Royal License Agreement.

The July 17, 1978 letter states that the parties shall abide by the terms of the Declaration of Restrictions made by Amfac and Pioneer Mill Company, Limited, which is filed in the Land Court. Paragraph 9k of the Declaration of Restrictions states:

> Each Operator understands and agrees that the Parcel is adjacent to a golf course operated by the Developer and that resort-related activities, including, without limitation, tournaments, luaus and concerts, may be held in the Kaanapali Beach Resort Area; that the Operator desired and sought such location with the understanding that this location may result in nuisances or hazards to persons and property on the Parcel as a result of such golf course operations or as a result of such other resort-related activities. Each of the Operators covenants that it shall assume all risks associated with such location, including but not limited to the risk of property damage or personal injury arising from stray golf balls or actions incidental to such resort-related activities and shall indemnify and hold harmless the Developer from any liability, claims, or expenses, including attorneys' fees, arising from such property damage or personal injury.

The term "Operator" is defined to include, *inter alia,* any owner of a condominium unit or association of owners of a condominium project as well as a developer. The July 17, 1978 agreement expired on its own terms at the closing date. However, the November 1, 1978 letter incorporates the terms of the July 17, 1978 letter, and the terms of the November 1, 1978 letter are still operative.

The December 1, 1978 Warranty Deed from Amfac to KRA was also filed in Land Court and has no expiration date. It states:

> That Grantee and Grantee's successors and assigns will abide by all of the obligations, covenants and restrictions set forth in the Declaration of Restrictions filed with the Land Court of the State of Hawaii.

The November 19, 1980 Kaanapali Royal License Agreement also contains indemnity language. The License Agreement, however, expired by its own terms no later than May 14, 1982.

More importantly, the Declaration of Horizontal Property Regime of Kaanapali Royal expressly provides that:

> Each Apartment owner covenants that he shall assume all risks associated with the location of the Project adjacent to a golf course operated by Amfac, including but not limited to the risk of property damage or personal injury arising from stray golf balls or actions incidental to resort-related activities (including without limitation tournaments, luaus and concerts), and shall indemnify and hold harmless Amfac from any liability, claims or expenses, including attorneys' fees, arising from such property damage or personal injury. Each Apartment owner is also required to covenant that Amfac shall have the right, in the nature of an easement, to subject the Project to nuisances incidental to the maintenance, operation or use of the golf course, and to the carrying out of such resort-related activities.

Paragraph 12(i) at pages 20 and 21. Likewise, the Condominium Conveyance Document to each apartment owner obligates the apartment owner to indemnify Amfac under the foregoing indemnification. Similarly, both the Horizontal Property Regime and the Condominium Conveyance Document obligate each apartment owner and

the Association under the indemnification provision contained in the Declaration of Restrictions. By stipulation filed herein, the parties agreed that the Court could consider the Declaration of Horizontal Property Regime and the Condominium Conveyance Document in conjunction with this motion.

The parties raise four major issues: 1) whether the indemnity language is sufficiently clear and unequivocal to transfer liability for Amfac's negligence to KRA and the Association; 2) whether the indemnity agreement is void because the agreement was not made in an arm's length transaction; 3) whether the indemnity agreement is against public policy and statutory law; and 4) whether the indemnity agreement is unenforceable because of acquiescence by Amfac.

### A. The Indemnity Agreement

Although the July 17, 1978 letter expired on the date of closing, the Declaration of Restrictions was filed in Land Court as was the Warranty Deed. Paragraph 9k in the Declaration of Restrictions was incorporated into both the November 1, 1978 agreement and the December 1, 1978 Warranty Deed.

The latest document was the November 19, 1980 License Agreement which expired on its own terms eighteen months after its execution. However, it did not purport to be the final agreement, superseding all prior agreements. The License Agreement was an independent agreement relating to a right of entry onto the golf course to plant trees. Its expiration did not terminate the indemnity agreements contained in the Declaration of Restrictions or the Warranty Deed.

The court notes that neither the Association nor KRA has contended that Amfac's subsequent planting of trees made the golf course more dangerous and consequently relieved them from their obligation to indemnify Amfac.

As a court sitting in diversity, this court must "use its best judgment in predicting how the state's highest court would decide

the case." *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980).

"Contracts of indemnity are strictly construed, particularly where the indemnitee claims that it should be held safe from its own negligence." *Kamali v. Hawaiian Electric Co.*, 54 Hawaii 153, 161, 504 P.2d 861 (1972). The indemnity agreement must be a "clear and unequivocal" assumption of liability. *Espaniola v. Cawdrey Mars Joint Venture*, 707 P.2d 365, 369 (Hawaii 1985); *See also Keawe v. Hawaiian Electric Co., Inc.*, 65 Hawaii 232, 649 P.2d 1149 (1982). However, there is no necessary "talismanic" recitation, and an express statement that the indemnification applied to Amfac's own negligence does not appear necessary. *United States v. Seckinger*, 397 U.S. 203, 213, 90 S.Ct. 880, 886, 25 L.Ed.2d 224 (1970); *Brown v. Seaboard Coastline Railroad Co.*, 554 F.2d 1299, 1302 (5th Cir.1977).

The Hawaii Supreme Court has reviewed three cases involving indemnity agreements. In all three cases, a third party sought indemnity from an employer immune from direct suit by the plaintiff because of the worker's compensation statutes. In *Kamali*, 54 Hawaii 153, 504 P.2d 861 (1971), the Hawaii Supreme Court held that the indemnity provision was not sufficiently clear to require the employer to indemnify a third party for the injury to an employee. In *Keawe*, 65 Hawaii 232, 649 P.2d 1149 (1982), and in *Espaniola*, 707 P.2d 365 (Hawaii 1985), the Supreme Court held that the indemnity provision was sufficiently clear and unequivocal to require the employer to indemnify the third party for the employer's proportionate share of damages; that is, for the employer's negligence but not for the indemnitee's own negligence.

The Hawaii Supreme Court has not ruled upon the issue of what language is sufficiently clear and unequivocal to require the indemnitee to indemnify the indemnitor for the indemnitor's negligence.[1] This is the situation before this court.

1. In *Espaniola,* the Supreme Court stated: "Our    conclusion that Leming was obligated to defend

In the present case, the contract requires KRA and the Association to indemnify and hold Amfac harmless from any damage due to stray golf balls. The parties disagree as to whether this language is sufficiently clear and specific under the standard enunciated by the Hawaii Supreme Court to require KRA and the Association to indemnify Amfac for Amfac's own negligence.

■ The court finds that the language is sufficiently clear and unequivocal. The parties negotiated an indemnity agreement for any injuries resulting from stray golf balls, thereby protecting Amfac from any liability due to the location of the condominium adjacent to the golf course. The specific reference to a particular type of injury narrows the scope of the indemnity agreement, lending support to the proposition that the parties intended to protect Amfac from claims of negligence on the part of Amfac. There is a line of cases which hold that the specification of a particular type of injury is sufficient to include the indemnification of the indemnitee's own negligence. *Brown v. Seaboard Coastline R.R. Co.*, 554 F.2d 1299 (5th Cir.1977) (an indemnity agreement regarding losses resulting from the use of the railroad tracks by the indemnitor); *Louisville & Nashville R.R. Co. v. The Atlantic Co.*, 66 Ga.App. 791, 19 S.E.2d 364 (1942); *Vanden Bosch v. Consumers Power Co.*, 394 Mich. 428, 230 N.W.2d 271 (1975).

In *Vanden Bosch,* the owner of a building agreed to indemnify the power company as the result of any injury from the location of a building under the transmission lines of the power company. The contract did not explicitly refer to indemnification for the indemnitee's negligence. The court held that the building's owner was required to indemnify the power company for the power company's negligence in hanging the power lines too low.

If KRA and the Association are not required to indemnify Amfac for Amfac's negligence, then the indemnity agreement is rendered meaningless. KRA and the Association are already obligated under common law for contribution commensurate with their share of the damages. Thus, the indemnity agreement only acquires meaning if the parties agreed to indemnify Amfac for its alleged negligence in designing the golf course or otherwise.

### B. *Arms Length Transaction*

Indemnity agreements may sometimes be voided where there is a disparity in bargaining power and the parties do not deal at arms length. *Southern Pacific Transportation Co. v. Nielsen,* 448 F.2d 121, 123 (10th Cir.1971).

■ The Association argues that because KRA and Amfac were closely aligned in the initial sale from Amfac to KRA, the indemnity agreement is void. However, there is no evidence that Amfac coerced agreements from either KRA or the Association. Even if KRA was deemed to be the agent for Amfac, the Association must still prove some misconduct. The Association provides no proof of misconduct by either Amfac or KRA in the sale of the condominium units to the individual owners. The record is devoid of any proof that KRA or Amfac possessed or utilized a disparate bargaining power against individual owners or the group of individual owners.

### C. *Public Policy and Statutory Law*

■ The Hawaii Supreme Court has consistently held that under clear and unequivocal language an indemnitor may contract to indemnify the indemnitee for the indemnitee's own negligence. *Kamali v. Hawaiian Electric Co.,* 54 Hawaii 153, 504 P.2d 861 (1972); *Keawe v. Hawaiian Electric Co., Inc.,* 65 Hawaii 232, 649 P.2d 1149 (1982); *Espaniola v. Cawdrey Mars Joint*

and indemnify Cawdrey-Mars against damage from *his* negligence impels a remand of the case for trial of the latter's contractual claim." *Espaniola,* 707 P.2d at 371. Amfac interprets the term "his" to refer to Cawdrey-Mars, thereby supporting Amfac's position. However, the Court also required that another trial be held to apportion the fault between Leming and Caw-

drey-Mars. If Leming was intended to indemnify for both its own as well as Cawdrey-Mars' negligence, another trial to apportion fault would be unnecessary. Therefore, the opinion when read as a whole and compared to the language in the indemnification agreement is limited to Leming's duty to indemnify Cawdrey-Mars for Leming's negligence.

*Venture,* 707 P.2d 365, 369 (Hawaii 1985). Therefore, the indemnity agreement is not void as against public policy in the state of Hawaii.

In construction contracts, Hawaii Rev. Stat. § 431–435 prohibits an indemnitor from indemnifying an indemnitee for the sole negligence of the indemnitee. KRA argues that the statute applies to leasehold agreements. *Country Club Apartments, Inc. v. Scott,* 246 Ga. 443, 271 S.E.2d 841 (1980); *Nat'l Candy Wholesalers, Inc. v. Chipurnoi, Inc.,* 180 Ga.App. 664, 350 S.E.2d 303 (1986). The Georgia courts have ruled that a landholder may not lease a building with an exculpatory clause protecting that landholder from his negligent failure to make required repairs.

However, the legislative history strongly indicates that the statute is limited to the construction industry for the protection of contractors and subcontractors.

> The purpose of this bill is to legislatively declare invalid, as against public policy, certain indemnity agreements *in the construction industry* which require contractors to assume liability for the negligence of others by contract.

1970 House Journal 978, S.C.Rep. 420–70 (emphasis added). *Espaniola,* 707 P.2d at 370–71.

The bill was created to prevent landholders from coercing agreements from contractors. Thus, the statute was enacted for the protection of contractors and subcontractors. Here, KRA and the Association are not contractors, but a developer and apartment purchaser respectively. The statute was not designed to protect developers or apartment owners for transactions outside the construction industry. Accordingly, the court finds that Hawaii Rev.Stat. § 431–453 is inapplicable to the present case.

### D. Acquiescence

The doctrine of acquiescence is described in Section 95 of the Restatement of the Law of Restitution:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Acquiescence requires more than mere knowledge of the dangerous condition. The knowledge must be combined with an acquiescence so as to make the defendant a joint participant.

In *Missouri Pacific R.R. Co. v. Arkansas Oak Flooring Co.,* 434 F.2d 575 (8th Cir.1970), the defendant agreed to indemnify the railroad for injuries as a result of the defendant's failure to provide a certain service. The court held that if the railroad acquiesced in the dangerous condition, the indemnity agreement was inapplicable. However, the court also explicitly distinguished between those agreements which by their terms stated that the indemnity agreement was applicable irrespective of the railroad's knowledge of the dangerous condition. *See also Rouse v. Chicago, Rock Island and Pacific R.R. Co.,* 474 F.2d 1180 (8th Cir.1973).

KRA argues that Amfac acquiesced in the dangerous condition here. Amfac was aware of the problem with golf balls and failed to make adequate corrective measures. Amfac argues that the risk was known and was contractually shifted. *Lehigh Valley R.R. Co. v. American Smelting & Refining Co.,* 256 F.Supp. 534 (E.D. Pa.1966).

Amfac was aware of the golf balls and the corrective measures it took [obviously] were [apparently] insufficient to prevent injury to Daniel Kole. However, the problem of stray golf balls was made known to all parties. The risk for these golf balls was shifted to KRA and its assignees. Therefore, the doctrine of acquiescence is not applicable under the present facts and circumstances.

Accordingly, IT IS HEREBY ORDERED that Defendant Amfac's Motion for Partial

Summary Judgment be, and the same is, GRANTED.