**CITY AND COUNTY OF HONOLULU,**
**Plaintiff,**

v.

**Clinton CHURCHILL and David Heenan, Trustees under the Will and of the Estate of James Campbell, Deceased; et al., Defendants.**

No. 99–670 ACK.

United States District Court,
D. Hawaii.

Oct. 27, 2000.

Lorraine H. Akiba, McCorriston, Miller, Mukai & Mackinnon, Honolule, HI, David Z. Arakawa, David C. Laxson, Office of Corp. Counsel, Honolulu, HI, John T. Komeiji, Watanbe, Ing & Kawashima, Honolulu, HI, for City and County of Honolulu.

David Earl Moser, McCutchen, Doyle, Brown & Enerson, San Francisco, CA, for Trustees under Will and the Estate of James Campbell, Ronald J. Zlatoper.

Gary G. Grimmer, Carlsmith, Ball LLP, Honolulu, HI, David A. Heenan, Richard W. Gushman, II, Ronald J. Zlatoper.

David M. Louie, Kelley G.A. Nakano, Roeca, Louie & Hiraoka, Honolulu, HI, Vernon T. Meador, III, Kurt Weismuller, Michael J. Stiles, Kathleen A. Kenealy, Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, Los Angeles, CA, for Oahu Sugar Co., Clinton R. Churchill, David A. Heenan, Richard W. Gushman, II, Northbrook Corp.

John Francis Perkin, Honolulu, HI, for Dole Food Co.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TRUSTEES MOTION FOR SUMMARY JUDGMENT ON CONTRACTUAL DEFENSE AND INDEMNIFICATION AND DENYING IN PART AND GRANTING IN PART DEFENDANTS OAHU SUGAR AND NORTHBROOK'S COUNTER–MOTION FOR SUMMARY JUDGMENT*

KAY, District Judge.

## BACKGROUND

The facts of this case are fully set forth in the Court's Order dated June 14, 2000,

granting in part and denying in part Defendant's Motion to Dismiss counts I, III, and IV. The following summarizes only those facts necessary for an understanding of the disposition of the issues in this motion.

This case arises out of the City and County of Honolulu's ("Plaintiff") acquisition of an approximately 590–acre sugar mill site and surrounding area at Honouliuli, Ewa, and Plaintiff's subsequent discovery and cleanup of allegedly pre-existing contamination at the site purportedly caused by releases of hazardous substances during Defendants'[1] ownership and/or operation of the Property.

Plaintiff filed a claim for relief with this Court on September 30, 1999, seeking to hold Defendants responsible for all past and future cleanup costs at the Property. Plaintiff filed a Second Amended Complaint on July 13, 2000, alleging the following causes of action: (1) owner/operator liability, contribution, and indemnity under § 1078(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a); (2) declaratory relief under CERCLA; (3) owner/operator liability, contribution, and indemnity under §§ 128D–6 and D–18 of the Hawaii Environmental Response Law ("HERL"); (4) strict liability for operation of ultrahazardous and/or abnormally dangerous activities; (5) negligence; and (6)declaratory relief on HERL state law claims. Plaintiff seeks a judgment that Defendants are jointly and severally liable for clean up, investigation, assessment, monitoring and testing costs, and interest and attorneys fees, and any additional damages available under tort theories.

Defendants Clinton Churchill and David Heenan, Trustees under the Will and of the Estate of James Campbell ("Trustees") filed a Third–Party Complaint against Northbrook Corporation, ("Northbrook") as Successor–in–Interest by Merger to Amfac, Inc., on March 15, 2000, and a First Amended Third–Party Complaint on May 12, 2000. Trustees also filed a Crossclaim against Co–Defendant Oahu Sugar Company, Ltd., ("Oahu Sugar") on March 15, 2000, and a First Amended Crossclaim on May 12, 2000.

James Campbell, and subsequently, the Estate of James Campbell have been the sole owners in fee simple of 590.672 acres of land in Honouliuli, Ewa (the "Property"), since at least 1877. Campbell and the Estate leased such Property, starting prior to 1900, to certain entities, including the Ewa Plantation Company, the Ewa Sugar Company, Inc., and the Oahu Sugar Company, all of which used the Property to operate a sugar plantation and sugar mill.[2]

Ewa Sugar Company, Inc., and its predecessor by merger, Ewa Plantation Company, were the lessee of the Property from at least 1890 to 1970. On April 9, 1970, Ewa Sugar Company assigned its lease of the Property, dated January 2, 1929 ("Ewa Sugar Company Lease") to Oahu Sugar. The Assignment of Lease stated that Ewa Sugar Company assigned:

> ALL of that certain Lease, dated January 2, 1929, by and between the Trustees under the Will and of the Estate of James Campbell, Deceased, as Lessors,

---

**1.** Defendants include Clinton Churchill and David Heenan, Trustees under the Will and of the Estate of James Campbell; and the Oahu Sugar Company, Limited.

**2.** The Ewa Plantation Company and its successor, the Ewa Sugar Company (a wholly-owned subsidiary of Castle & Cooke, Inc.) are allegedly defunct. On August 10, 2000, Oahu Sugar filed a Third Party Complaint in this action naming Castle & Cooke, Inc. as a Third–Party Defendant. Castle & Cooke was not represented at the September 11, 2000 hearing; and had not yet been served.

and Ewa Plantation Company (the predecessor in interest of the Assignor), as Lessee ... TO HAVE AND TO HOLD the same unto the Assignee *for the unexpired residue of the term* of said Lease ...

Assignment of Lease; Lessor's Consent and Release (hereinafter "Assignment"), at 1 (emphasis added). The Assignment contained the following relevant clause regarding the assumption of obligations by the Assignee:

That Assignee [Oahu Sugar], in consideration of the foregoing assignment, does hereby covenant with the Assignor and the Lessors under said Lease (in consideration of the Lessors' consent to said assignment): THAT the Assignee will punctually pay the rent reserved by said Lease, and faithfully observe and perform all of the covenants and agreements contained in said Lease and on the part of the Lessee to be paid, observed and performed, and will indemnify and keep the Assignor and the Lessors indemnified against all claims, demands, damages, costs, counsel fees and expenses by reason of any breach of said covenants.

Assignment, at 2. In the same document, Trustees released Ewa Sugar Company from all liability resulting from their lease of the Property.

One week after the assumption of the Ewa Sugar Company Lease by Oahu Sugar, the lease was amended, wherein Oahu Sugar combined leases from two area of land[3] into one lease. *See* Amendment of Lease, at 1. The term of the Amendment of Lease was twenty-five years, retroactively commencing January 1, 1970, and ending December 31, 1994. In amending the two leases, Oahu Sugar and Trustees agreed that:

NOW, THEREFORE, the parties hereto do hereby mutually agree that said leases, as amended, shall be and the same are hereby amended to delete all of the provisions presently therein set forth and to substitute therefore all of the provisions in the lease... [e]xcept as amended hereby, said leases, as amended, are ratified and confirmed and, as amended hereby, continue in full force and effect.

Amendment of Lease, at 2.

The 1970 Amendment of Lease ("Amendment of Lease") contained the following provision regarding indemnity:

That the Lessee will at all times during said term keep said premises in good order and in a strictly sanitary condition and observe and perform all laws, ordinances, rules and regulations now or hereafter made by any governmental authority for the time being applicable to said premises or any improvement thereon or use thereof, including without limitation to the generality of the foregoing all laws, ordinances, rules and regulations concerning air and water pollution, and the duty to remove all cars and other property which may be abandoned on the demised premises, will indemnify the Lessors against all actions, suits, damages and claims by whomsoever brought or made by reason of the nonobservance or nonperformance of said laws, ordinances, rules and regulations or this covenant.

Amendment of Lease, at 15.[4]

In the Amendment of Lease, Amfac, Inc., gave the following guarantee:

---

**3.** The second lease that was incorporated in the Amendment of Lease was a lease executed in 1963 between Trustees as Lessor and Oahu Sugar as Lessee.

**4.** The Amendment of Lease also included, *inter alia,* provisions regarding Observance of Laws, Repair, Maintenance and Replacement, Waste, and Surrender.

AMFAC, Inc., a Hawaii corporation, does hereby guarantee the complete and timely payment, observance and performance by the Lessee of each and every of the Lessee's obligations under said leases, as amended hereby ... and does hereby agree, upon demand of the Lessors, and without any requirement that the Lessors first exhaust all remedies against the Lessee, to make good to the Lessors upon demand as the same shall arise or at any time thereafter and to defend, indemnify and save and hold harmless the Lessors, their successors in trust and assigns, from and against any loss, cost, damage or liability arising from any failure on the part of the Lessee so to pay, observe and perform such obligations and from and against any loss, cost, damage or liability arising from any failure on the part of AMFAC, Inc., to observe and perform this guaranty, including in all cases reasonable attorney's fees and court costs.

Amendment of Lease, at 2–3.

On May 1, 1995, Amfac, Inc., the parent corporation of Oahu Sugar, was merged with and into Northbrook. By letter dated November 22, 1999, Trustees tendered their defense and indemnification to Northbrook.

On July 21, 2000, Trustees filed the instant Motion for Summary Judgment asserting that Oahu Sugar and Northbrook ("Oahu Sugar/Northbrook"), have a contractual duty to defend and indemnify Trustees against all of Plaintiff's claims, and that Trustees should be reimbursed for costs incurred to date, and any costs incurred in the future including an award of prejudgment interest. Trustees' motion was supported by a Concise Statement of Facts filed the same day.

Oahu Sugar/Northbrook filed a Memorandum in Opposition and a Counter–Motion for Summary Judgment on August 24, 2000, arguing that the indemnification pro-vision in the Amendment of Lease does not operate to indemnify Trustees for CERCLA liability, that Oahu Sugar/Northbrook have no duty to defend Trustees, and that Trustees are not entitled to recover costs and expenses. Oahu Sugar/Northbrook's motion was supported by a Concise Statement of Facts filed the same day. Trustees filed a Reply on August 31, 2000. Oahu Sugar/Northbrook filed a Reply on September 6, 2000. The court heard oral argument on September 11, 2000 at 9:45.

## STANDARD

### Motion for Summary Judgment

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250—51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct.

1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

### I. OAHU SUGAR'S DUTY TO INDEMNIFY TRUSTEES FOR ANY LIABILITY THAT MAY BE ASSESSED AGAINST TRUSTEES ON PLAINTIFF'S CLAIMS

In order to find that Trustees are fully indemnified for any environmental liability assessed against them on the Plaintiff's claims, this Court must find that (1) Oahu Sugar assumed the full obligation of the Ewa Sugar Company to indemnify Trustees for any liability arising prior to the assignment of the Ewa Sugar Company Lease to Oahu Sugar; and (2) the indemnification provisions in the Ewa Sugar Company Lease and in the Amendment of Lease cover any environmental liability under CERCLA, HERL, and tort theories of strict liability for ultrahazardous activity and negligence.

### A. Indemnification for CERCLA liability in General

First, the Court notes that CERCLA allows for indemnification agreements. CERCLA contains a provision expressly addressing the permissibility of indemnification clauses:

No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1). The Ninth Circuit has interpreted this provision to mean "that enforcement of indemnification clauses does not frustrate public policy as expressed in CERCLA." *Jones–Hamilton Co. v. Beazer Materials & Services, Inc.,* 973 F.2d 688, 692 (9th Cir.1992) (citing *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1459 (9th Cir.1986)). Enforcement of an indemnification provision does not relieve a party of CERCLA liability, but only provides for a shifting of costs. With an indemnification provision "all responsible parties would remain fully liable to the government, although they would be free to enter into private contractual arrangements." *Id.*

Trustees do not dispute that as the owner of the Property, they are a Potentially Responsible Person ["PRP"] under CERCLA and HERL. *See* 42 U.S.C. § 9607(a); H.R.S. § 128D–6. The Trustees' potential CERCLA and HERL liability as a PRP arises solely from their status as an owner of the land. Oahu Sugar/Northbrook have failed to present any evidence that Trustees ever conducted any activities on the property. Therefore, any indemnification duty Oahu Sugar/Northbrook owe Trustees is not for Trustees own conduct. The Court finds that a Motion for Summary Judgment for Indemnification is proper at this time. *See Pancakes of Hawaii, Inc. v. Pomare Properties Corporation,* 85 Hawai'i 286, 944 P.2d 83 (App.1997) (holding that a duty to defend under an indemnification agreement arises at the time the suit is filed); *see also Kole v. Amfac, Inc.,* 665 F.Supp. 1460 (D.Hawai'i 1987) (awarding summary judgment on a contractual duty to indemnify).

**B.  *The Extent of the Obligations Assumed by Oahu Sugar/Northbrook Under the Assignment of Lease and Amendment of Lease.***

Trustees argue that under the assignment of the Ewa Sugar Company Lease in 1970, Oahu Sugar assumed all the past liability of the Ewa Sugar Company, running back to the commencement of the 1929 lease. Trustees contend that, as Assignee, Oahu Sugar stepped into the shoes of the former Lessee and therefore Oahu Sugar's agreement in the Assignment to "indemnify and hold harmless" Trustees includes indemnification for any environmental liability arising from the past actions of the Ewa Sugar Company.

Oahu Sugar/Northbrook argue in opposition that the Assignment was prospective. They contend that the language of the granting clause of the Assignment, "TO HAVE AND TO HOLD the same unto the Assignee for *the unexpired residue* of the term of said Lease, free and clear of all liens and encumbrances..." (emphasis added), limits what Oahu Sugar assumed under the lease. Assignment, at 1. Oahu Sugar/Northbrook argue that because the assumption of obligations was prospective, their indemnification obligation is limited to post–1970 activities.

The Court must determine the meaning of the assignment clause in order to determine the extent to which Oahu Sugar assumed the liability for Ewa Sugar Company's past breaches.

The assumption clause in the Assignment states that Oahu Sugar assumed the following obligations:

THAT the Assignee will punctually pay the rent reserved by said Lease, and faithfully observe and perform all of the covenants and agreements contained in said Lease and on the part of the Lessee to be paid, observed and performed, and will indemnify and keep the Assignor and the Lessors indemnified against all claims, demands, damages, costs, counsel fees and expenses by reason of any breach of said covenants...

Assignment, at 2. This assumption clause does not state whether Oahu Sugar's as-

sumption of these obligations was prospective or extended back to the start of the 1929 lease. The granting clause stated that the Assignor "does hereby assign, transfer, set over and deliver unto the Assignee absolutely: ALL of that certain lease dated January 2, 1929 . . . for the *unexpired residue* of the term." Assignment, at 1. This clear statement of limitation is the only language in the Assignment which addresses the extent of what Oahu Sugar assumed under the Lease.

■ Hawaii state law requires indemnity clauses, particularly those which purport to indemnify a party against its own negligence, to be strictly construed and have a clear and unequivocal statement of intent. *See Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 176, 707 P.2d 365 (1985); *Straub Clinic & Hospital, Inc. v. Chicago Ins. Co.*, 4 Haw.App. 268, 273, 665 P.2d 176 (1983); *Keawe v. Hawaiian Electric Co.*, 65 Haw. 232, 649 P.2d 1149 (1982); *Kamali v. Hawaiian Elec. Co.*, 54 Haw. 153, 504 P.2d 861 (1972)(creating rule). Trustees argue that the indemnification provision in the Assignment should not be analyzed by the Court under this higher standard, but should be interpreted instead according to the rules of contract construction. Under Trustees argument, the court would interpret the indemnification provision according to its plain, ordinary, and accepted sense in common speech. *See Dawes v. First Insurance Co. of Hawaii Ltd.*, 77 Hawai'i 117, 121, 883 P.2d 38 (1994). However, there is no reason why an indemnification provision in an assignment of lease should be construed any differently from an indemnification provision in any other contract. *See e.g. Ryan Mercantile Co. v. Great Northern Railway Co.*, 294 F.2d 629, 633 (9th Cir.1961)(applying clear and unequivocal standard to indemnification provision in lease).

In considering very analogous facts, the court in *Servco Pacific, Inc. v. Dods*, 106 F.Supp.2d. 1034 (D.Hawai'i 2000), determined that, under Hawaii state law, when interpreting an indemnification provision in an assignment of lease, the indemnification must be strictly construed to clearly and unequivocally include the past indemnification obligation of the prior lessee; otherwise the provision must be interpreted to include only prospective obligations. In *Servco*, the court refused to apply an indemnity agreement to the acts of a prior lessee where there was no clear and unequivocal statement of an intent to assume liability for the indemnitee's past breaches.

■ Just as in *Servco*, there was no express statement of intent by Oahu Sugar in the Assignment to assume the past liabilities of Ewa Sugar Company. Moreover, there is a stark contrast between the absence of any language in the Assignment whereby Oahu Sugar assumed the obligation to indemnify for past acts of Ewa Sugar Company on the one hand; and the clearly expressed release by the Trustees of Ewa Sugar Company from its obligations "from the commencement of the term of said Lease to the date of the execution and delivery of this assignment." Assignment, at 3.

Trustees further argue that even if the clear and unequivocal standard is applicable to indemnification clauses in an assignment of lease, it is not applicable in the instant case because Trustees are not asking to be indemnified for their own acts or negligence. However, the court recognizes that Hawaii state law requires a strict construction of indemnification provisions, even where the indemnification clause does not purport to indemnify an indemnitee for his own negligence. Hawaii law requires that "contracts of indemnity are strictly construed, *particularly* where the indemnitee claims that it should

be safe from its own negligence." *Kamali,* 54 Haw. at 161, 504 P.2d 861 (emphasis added). The Court finds Oahu Sugar did not clearly and unequivocally agree to indemnify Trustees for any liabilities arising prior to 1970.

A review of treatises shows that the general rule of assignments and assumptions of obligations is in accord with Hawaii state law; that the liability of the assignee does not extend back to breaches prior to the assignment. "An assignee's agreement to assume the tenant's obligations is held, without more, to exclude existing breaches and include only obligations accruing subsequent to the assignment." Milton R. Friedman, Friedman on Leases, § 7.501c2(b), at 392 (1997)[5]. Further a "transferee will not be liable for any breach of the promise which occurred before the transfer to him." Restatement (Second) of Property § 16.1(3) (Obligation Created by an Express Promise—Burden of Performance After Transfer).

For any liability arising from privity of estate, in the absence of an express assumption, the assignee "is not liable for breaches that occurred prior to the time at which he acquired the estate, nor for those occurring subsequent to the date that he disposes of it." American law of Property, § 9.5 at 356. An assumption agreement creates privity of contract between a lessor and assignee for the remainder of the term provided in the lease. *See Fanta v. Maddex,* 80 Cal.App. 513, 252 P. 630 (1926); American Law of Property, § 9.5 at 357. Thus, because the Assignee is only in privity of contract for the remainder of the term, the liability must be based on actions taken during the remainder of the term.

Accordingly, under the general rule of assignments, liability based on privity of estate, or liability arising from privity of contract, the instant assignment of lease does not include an assumption by Oahu Sugar of breaches that occurred prior to the time of the assignment.[6] Therefore, the Court finds that the assumption of the 1929 Ewa Sugar Company Lease by Oahu Sugar was only for the remainder of the lease term, and the obligations assumed under the assignment were assumed prospectively. Oahu Sugar's duty to indemnify Trustees runs only from and after 1970.

Nevertheless, Trustees argue that the language in the Amendment of Lease and the Guarantee of Amfac establish that Oahu Sugar/Northbrook assumed indemnification of past liabilities. The Court disagrees. To interpret the intent of the parties under a lease the Court must consider all of the writings of the transaction together. *See Broida v. Hayashi,* 51 Haw. 493, 495, 464 P.2d 285 (1970) (stating that the court must interpret a lease as a whole and consider writings of the same transaction together in order to gather the probable intent of the parties). Oahu Sugar and Trustees signed an Amendment of Lease one week after the assumption of the Ewa Sugar Company Lease by Oahu Sugar, wherein they combined two leases of different areas of land into one lease. *See* Amendment of Lease, at 1. In the Amendment of Lease, Oahu Sugar and the Trustees "mutually agree[d] that said leases

---

**5.** Trustees attempted to cite *Friedman* for the opposite proposition that, without a clear statement to the contrary, an assumption is retrospective. However, Trustees cited only a portion of the *Friedman* treatise, taking a quotation out of context.

**6.** Trustees urge the Court to follow the holding in *Joslyn Manufacturing Co. v. Koppers* Co., 40 F.3d 750 (5th Cir.1994), that an assumption of a duty of indemnification without language limiting the assumption to prospective obligations includes all past liability. However, *Koppers* was decided under the analytical framework of Louisiana state civil law and heritable personal obligations, making any analogy to a case decided under Hawaii state law inappropriate.

[1929 Ewa Sugar Company Lease and 1963 Lease by and between Trustees and Oahu Sugar], as amended, shall be and the same are hereby amended to delete all of the provisions presently therein set forth and to substitute therefor all of the provisions in the lease [Amendment of Lease, dated April 16, 1970] ... [and] except as amended hereby, said Leases, as amended, are ratified and confirmed and, as amended continue in full force and effect." Amendment of Lease at 2.

The Amendment of Lease includes a covenant to observe and perform all laws and to indemnify Trustees against all claims arising from a failure to do so *"during said term."* Amendment of Lease at 15 (emphasis added). The term of the Amendment of Lease was twenty-five (25) years, commencing January 1, 1970. *See* Amendment of Lease at 8. Thus the clear intent of the parties in the Amendment of Lease was to provide for indemnification of Trustees from and after 1970.

The indemnification clause in the Amendment of Lease applies to claims "arising out of or in connection with the use of the demised premises and appurtenances by *the Lessee."* Amendment of Lease, at 22 (emphasis added). The Lessee in the Amendment of Lease is Oahu Sugar and not the Ewa Sugar Company. Again, this limitation indicates that Oahu Sugar agreed to indemnify Trustees only for Oahu Sugar's own actions and not the past actions of the Ewa Sugar Company.

The Amendment of Lease included an agreement by Amfac, Inc. (predecessor-in-interest to Northbrook) to:

guarantee the complete and timely payment, observance and performance by the Lessee of each and every *of the Lessee's obligations* under said leases, as amended hereby ... and to defend, indemnify and save and hold harmless the Lessors, their successors in trust and assigns, from and against any loss, cost,

damage or liability arising from any failure on the part of the Lessee so to pay, observe and perform such obligations ...

Amendment of Lease, at 2–3 (emphasis added). This agreement clearly states the guarantor's intention to protect Trustees against any failure by the Lessee (Oahu Sugar) to observe the covenants and obligations. There is no statement of intent by Northbrook to assume any indemnification responsibility for the past breaches of Ewa Sugar Company.

Considering all the writings of the transaction as a whole; the lack of an indication that the parties intended Oahu Sugar to assume the past liabilities of the Ewa Sugar Company in the Assignment, the stark contrast to the release of Ewa Sugar Company "from the commencement of the term of said Lease to the date of the execution and delivery of this assignment," the clear statement of intent to limit indemnification of Trustees to post–1970 activities under the observance of laws section of the Amendment of Lease, and the guarantee of Northbrook to indemnify for any failure on the part of Lessee Oahu Sugar and not the Ewa Sugar Company, this Court holds that the obligation of Oahu Sugar/Northbrook to indemnify Trustees was prospective from 1970 to the end of the lease term.

Moreover, the Court alternatively finds for many of the foregoing reasons, that under the contract standard of review of interpretation, according to the plain, ordinary, and accepted use in common speech under *Dawes,* the Assignment would not include indemnification for past acts.

**C. *The scope of the indemnification provision in the 1970 Amendment of Lease.***

Having determined that the indemnification obligations of Oahu Sugar/Northbrook are prospective, the Court now examines

the scope of those obligations. The extent of Oahu Sugar/Northbrook's duty to indemnify Trustees is determined by the indemnification provisions in the 1970 Amendment of Lease. Oahu Sugar/Northbrook argue that their duty to indemnify Trustees does not include indemnification for liability under CERCLA, HERL, negligence and strict liability for ultrahazardous activities.[7]

■ The Court must examine the language of the Amendment of Lease to determine whether or not the indemnification provisions include environmental liability. Whether a specific contract provides for indemnity vis-a-vis CERCLA liability is determined by state rather than federal law. *See Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1458–60 (9th Cir.1986). Thus the Court will consider the indemnification provisions under the state law of Hawaii that requires strict construction of all indemnity clauses.

■ The Amendment of Lease was executed prior to the enactment of CERCLA. However, the fact that CERCLA was not in existence at the time of contracting is not fatal to a claim that the indemnification provisions contain a clear and unequivocal statement of intent to include CERCLA liability. The general rule is that in order for a pre-CERCLA indemnification clause to cover subsequent CERCLA liability, the clause must be either broad enough to cover any and all claims, or clearly refer to environmental liability. *See Purolator Products Corp. v. Allied–Signal, Inc.,* 772 F.Supp. 124, 132 (W.D.N.Y.1991); *Beazer East Inc. v. Mead Corp.,* 34 F.3d 206, 211 (3rd Cir.1994)(the clause must be either specific enough to include CERCLA liability or general enough to include any and all

environmental liability); *American National Bank and Trust Co. of Chicago as Trustee for Illinois v. Harcros Chemicals, Inc.,* 1997 WL 281295 at *16 (N.D.Ill. May 20, 1997) (citing cases).[8]

Several jurisdictions have found pre-CERCLA indemnification provisions to express a clear and unequivocal intent to include CERCLA liability. *See Kerr–McGee Chemical Corp. v. Lefton Iron & Metal,* 14 F.3d 321 (7th Cir.1994), reh. denied (Feb. 9, 1997)(finding indemnification provision in purchase agreement for any "claim... concerning pollution or nuisance" sufficiently clear and unequivocal to indemnify seller for CERCLA liability arising from seller's own negligence), *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir.1993)(finding indemnification agreements sufficiently broad so as to state a clear and unmistakable intent to include CERCLA liability in indemnification agreement even though there was no mention of environmental liability in provision); *United States v. Hardage,* 985 F.2d 1427, 1434 (10th Cir.1993)(finding that all-inclusive broad language expresses a clear and unequivocal intent to indemnify an indemnitee for its own acts); *Purolator Products Corp.,* 772 F.Supp. at 131–32 (finding the indemnification provision sufficiently broad so as to state a clear and unequivocal intent to include CERCLA liability even though agreements did not expressly refer to environmental claims); *American National Can Co. v. Kerr Glass Manufacturing Corp.,* 1990 WL 125368 (N.D.Ill. Aug.22, 1990) (finding language "any claim of any kind or nature whatsoever" without any reference to environmental liability specifically, sufficiently broad to unambiguously transfer the risk of un-

---

**7.** HERL, the state environmental law, is modeled after CERCLA, the Federal statute. Therefore, the Court includes potential HERL liability and indemnification in its discussion of CERCLA.

**8.** The Court notes that it is not relying on this unpublished decision, pursuant to Federal Rule of Appellate Procedure 36–3.

forseen liability under CERCLA) [9]. In applying the clear and unequivocal standard, some courts have stated that the policy reason for the heightened scrutiny for indemnifying an indemnitee for its negligent acts is equally applicable to indemnification for a strict liability statute. *See Fina v. ARCO,* 200 F.3d 266, 270 (5th Cir.2000); *Purolator Products Corp.* 772 F.Supp. at 131–132; *Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Railway Co.,* 890 S.W.2d 455, 458 (Tex.1994). The Ninth Circuit, considering an indemnification clause under California law, held that a party may contract to indemnify another for environmental liability even though CERCLA was not in existence at the time of contracting. *See Jones–Hamilton Co. v. Beazer Materials & Services, Inc.,* 973 F.2d 688 (9th Cir.1992) (finding indemnification clause sufficiently broad so as to be unambiguous and include CERCLA liability although not applying the standard of "clear and unequivocal").

The *Servco* decision, which is the only case that has considered indemnification for CERCLA liability under the law of Hawaii, found that a general indemnification provision for "all claims" was sufficient to include CERCLA liability. *See Servco,* 106 F.Supp.2d at 1044 (stating that "the language 'all claims' arising out of Servco's 'use or occupancy' is broad enough to include CERCLA claims based upon Servco's violations") [10]; *Fina v. ARCO,* 200 F.3d at 270 (finding that the "phrase 'all claims' certainly encompasses claims arising under CERCLA").

■ In the Amendment of Lease, the Lessee covenants included the following agreements to indemnify the Lessor:

(4) *Observance of Laws.* That the Lessee will at all times during said term keep said premises in good order and in a strictly sanitary condition and observe and perform all laws, ordinances, rules and regulation now or hereafter made by any governmental authority for the time being applicable to said premises or any improvement thereon or use thereof, *including without limitation to the generality of the foregoing all laws, ordinances, rules and regulations concerning air and water pollution,* and the duty to remove all cars and other property which may be abandoned on the demised premises, will indemnify the Lessors against all actions, suits, damages and claims by whomsoever brought or made by reason of the nonobservance or nonperformance of said laws, ordinances, rules and regulations or of this covenant.

\*      \*      \*      \*      \*      \*

(14) *Indemnity.* That the Lessee will indemnify and hold the Lessors harmless from and against all claims and demands for loss or damage, including property damage, personal injury and wrongful death, arising out of or in connection with the use or occupancy of the demised premises and appurtenances by the Lessee, or any accident or fire on said premises or any nuisance made or suffered thereon...

Amendment of Lease, at 15, 22–23 (emphasis added).

These provisions contain no limiting language and are sufficiently broad to encompass all environmental claims, including CERCLA liability as well as HERL, ultra-

---

**9.** The Court notes that it is not relying on this unpublished decision, pursuant to Federal Rule of Appellate Procedure 36–3.

**10.** The Court recognizes that the Lease at issue in *Servco* was executed after the enact-

ment of CERCLA, however, the holding of the *Servco* court is still instructive as it applies the strict construction rule of Hawaii state law for indemnification provisions.

hazardous activities and negligence liability, arising from the actions of Oahu Sugar. The clauses clearly and unequivocally require Oahu Sugar to indemnify Trustees for all liability arising from "all laws, ordinances, rules and regulations *now or hereafter made* by any governmental authority for the time being applicable to said premises or any improvement thereon or use thereof . . . ." Amendment of Lease, at 15 (emphasis added). Oahu Sugar agreed to indemnify Trustees "from and against *all claims* and demands for loss or damage . . . arising out of or in connection with the use or occupancy of the demised premises . . . or *any nuisance made or suffered thereon* . . . ." Amendment of Lease, at 22 (emphasis added). This language is clearly and unequivocally broad enough to include CERCLA liability. *See Servco,* 106 F.Supp.2d at 1044; *Fina v. ARCO,* 200 F.3d at 270.

Additionally, the indemnification provision is specific in its inclusion of indemnification for liability arising from environmental laws and regulations. Amendment of Lease, at 15. The observance of laws clause specifically referred to indemnification for liability arising from "including without limitation to the generality of the foregoing all laws, ordinances, rules and regulations concerning air and water pollution . . . now or hereafter made by any governmental authority." *Id.* While the parties could not anticipate the enactment of CERCLA itself, it is clear from this language that the parties were aware of the potential for the enactment of new laws and regulations, including environmental regulations, and took care to include this potential liability in the indemnification provisions.

Moreover, the parties amended the 1970 Amendment of Lease *after* the enactment of CERCLA and did not alter the indemnification provisions. *See* Exhibit 6 to Opp., Third Amendment of Lease, dated October 25, 1984. Further, the common law torts of strict liability for ultrahazardous activities and negligence were in existence well before the signing of the 1970 lease.

Therefore, this Court holds that the indemnification provisions in the Amendment of Lease are sufficiently broad and specific enough to meet the clear and unequivocal standard and cover any environmental liability under CERCLA, HERL, negligence and strict liability for ultrahazardous activity assessed against Trustees as owners of the Property due to actions taken by Oahu Sugar on the property from 1970 forward.[11]

Accordingly, the Court (1) GRANTS Trustees' Motion for Summary Judgment as to indemnification for environmental liability under CERCLA, HERL, negligence and strict liability for ultrahazardous activity arising from post–1970 activities, and DENIES Oahu Sugar/Northbrook's Counter–Motion and (2) DENIES Trustees' Motion for Summary Judgment as to indemnification for pre–1970 activities, and GRANTS Oahu Sugar/Northbrook's Counter–Motion.

## II OAHU SUGAR'S CONTRACTUAL DUTY TO DEFEND TRUSTEES UNDER THE 1970 AMENDMENT OF LEASE INDEMNIFICATION CLAUSE.

█ Trustees argue that under the indemnification provision in the Amendment of Lease, Oahu Sugar is required to defend Trustees and that under the guarantee

---

**11.** As the Court finds that the indemnification clause is sufficiently clear and unambiguous to include CERCLA, HERL, ultrahazardous activity, and negligence liability, alternatively, under the lower standard of review for contracts, the plain, ordinary, and accepted in common speech meaning of the indemnification clauses would also include such liability.

clause in the Amendment of Lease, Northbrook is required to defend the Trustees against the Plaintiff's claims. Trustees cite *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 286, 944 P.2d 83 (Ct.App.1997), for the proposition that the duty to defend arising under an indemnity agreement should be analyzed just as if it were arising under an insurance policy. In *Pancakes*, the Intermediate Court of Appeals of Hawaii applied the Hawaii Supreme Court's analysis of the duty to defend arising under an insurance contract to a contractual indemnity case. The court stated that "we can discern no logical reason why the duty to defend based on indemnity contracts would not follow the same philosophy used in the insurance context." *Id.* at 291, 944 P.2d 83. This case was the first in Hawaii to so expand the insurer's duty to defend to non-insurance indemnity contracts, stating that to do otherwise would "defeat the purpose of a duty to defend provision." *Id.* at 291, 292, 944 P.2d 83. The decision followed the reasoning of several other jurisdictions, including those in which indemnity provisions themselves are disfavored. *Id.* at 292, 944 P.2d 83. While a Federal Court applying state law is not bound by lower state court precedents and must predict how the Supreme Court of the state would rule on the question, this Court is persuaded that the reasoning in *Pancakes* is sound and applicable to the immediate case, and would be adopted by the Hawai'i Supreme Court.

In the insurance context, the duty to defend arises whenever a suit "raises a potential for indemnification liability of the insurer to the insured." *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 832 P.2d 733 (1992). The pertinent language describing Northbrook's duty to defend and indemnify in the guarantee clause is as follows:

> AMFAC, Inc., [predecessor by merger to Northbrook], a Hawaii corporation... does hereby agree, upon demand of the Lessors, and without any requirement that the Lessors first exhaust all remedies against the Lessee, to make good to the Lessors upon demand as the same shall arise or at any time thereafter and to *defend,* indemnify and save and hold harmless the Lessors, their successors in trust and assigns, from and against any loss, cost, damage or liability arising from any failure on the part of the Lessee so to pay, observe and perform such obligations...

Amendment of Lease, at 2–3 (emphasis added). Northbrook's duty to defend is clear from the plain language of the guarantee clause. Oahu Sugar's duty to defend arises from the language of the indemnification clause. As the present suit involves claims that are covered by the indemnification provision, Oahu Sugar has a duty to defend against all claims on behalf of Trustees.

■ The duty to defend includes those claims for which Oahu Sugar is not required to indemnify Trustees because "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." *First Ins. Co. of Hawaii Inc. v. State of Hawaii*, 66 Haw. 413, 417, 665 P.2d 648 (1983). Thus, the duty to defend is broader than the duty to indemnify. *See Id.* at 420, 665 P.2d 648. Consequently, Oahu Sugar and Northbrook's duty to defend Trustees encompasses all claims brought by Plaintiff against Trustees.

Oahu Sugar/Northbrook urge the Court to find that there is no duty to defend because the Amendment of Lease requires Oahu Sugar to obtain liability insurance naming Trustees as an additional insured. *See* Amendment of Lease at 21–22. The Court in *Pancakes* considered whether or

not the availability of a defense from another insurer impacts the duty to defend under an indemnification agreement. There, the court found that "the fact that [the Defendant] has an insurance carrier is irrelevant...the record does not clearly reveal that [Defendant] had requested or [the insurance carrier] had agreed to defend." *Pancakes,* at 295, 944 P.2d 83. Here, the record is equally unclear as to whether Northbrook's insurance carrier, Fireman's Fund, has agreed to defend Trustees and to what extent it will do so. Considering the existence of the indemnity and duty to defend provisions of the Amendment of Lease, and the guarantee of Northbrook, Trustees should not have to bear the risk of Fireman's Fund not accepting the tender of defense. *See Id.* Thus, the Court finds that both Oahu Sugar and Northbrook have a duty to defend Trustees in the present action, regardless of the possibility of a defense by an insurance carrier.

Accordingly, the Court GRANTS Trustees' Motion for Summary Judgment and DENIES Oahu Sugar/Northbrook's Counter–Motion for Summary Judgment as to Oahu Sugar/Northbrook's Duty to Defend Trustees on all claims brought by Plaintiff.

## III AWARD OF COSTS AND EXPENSES INCLUDING ATTORNEYS' FEES INCURRED BY TRUSTEES IN DEFENDING AGAINST PLAINTIFF'S CLAIMS TO DATE and PREJUDGMENT INTEREST.

### A. Award of Attorneys' Fees, Costs and Expenses Expended to Date.

Trustees ask for a dollar amount award of attorneys' fees and costs expended to date. The language of the indemnity clause is clear that Oahu Sugar/Northbrook are responsible for reimbursing Trustees for "all costs and expenses including reasonable attorneys' fees incurred

in connection with the defense of any such claim ...." Amendment of Lease, at 22–23. Trustees are entitled to all costs and expenses, including reasonable attorneys fees expended in defending themselves against Plaintiff's claims.

### A. An Award of Prejudgment Interest.

Trustees argue that they should be awarded prejudgment interest on their costs and expenses to date. Hawaii Revised Statutes Section 636–16 governs an award of prejudgment interest. Prejudgment interest is awarded at the court's discretion. *See Leibert v. Finance Factors, Ltd.,* 71 Haw. 285, 293, 788 P.2d 833 (1990). The purpose of an award of prejudgment interest is to avoid substantial injustice due to litigation delays, or other delay in judgment. *See Schmidt v. Marco Polo Apartments,* 73 Haw. 526, 534, 836 P.2d 479 (1992). A denial of prejudgment interest is proper where there is no showing that the non-moving party's "conduct unduly delayed the proceedings" of the case. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 137, 839 P.2d 10. Trustees have made no showing that Oahu Sugar/Northbrook delayed these proceedings. The action by the City and County of Honolulu against Trustees and Oahu Sugar commenced on September 30, 1999. Trustees first filed a Third–Party Complaint against Northbrook and a Crossclaim against Oahu Sugar on March 15, 2000. Trustees filed their Motion for Summary Judgment on July 21, 2000. The hearing on the Summary Judgment Motion was held less than six months after the filing of the Third Party Complaint and was not unduly delayed. Finding that Oahu Sugar/Northbrook did not unduly delay the proceedings, the Court holds that an award of prejudgment interest is not warranted.

Accordingly, the Court GRANTS Trustees' Motion for Summary Judgment and

DENIES Oahu Sugar/Northbrook's Counter–Motion for Summary Judgment as to reimbursement for costs, expenses, attorneys' fees to date and refers the issue of amount to be awarded to the Magistrate Judge and DENIES Trustees' Motion for Summary Judgment as to prejudgment interest.

## IV. AWARD OF COSTS AND EXPENSES, INCLUDING ATTORNEYS' FEES INCURRED BY TRUSTEES IN ESTABLISHING THEIR RIGHT TO INDEMNIFICATION.

Trustees ask the Court to award them costs and expenses, including attorneys' fees incurred in establishing their right to indemnification. The general rule is that attorneys' fees are not awarded in an action to establish a right of indemnification. *See Flunker v. United States,* 528 F.2d 239, 246 (9th Cir.1975). In *Dillingham Shipyard v. Associated Insulation Co., Ltd.,* the Ninth Circuit recognized an exception to this general rule such that "attorneys' fees are recoverable in an action to establish a right of indemnity, where the agreement so provides." 649 F.2d 1322, 1328 (9th Cir.1981). The indemnity provision in *Dillingham* encompassed "all attorneys' fees, costs and expenses of whatsoever kind or nature which are in any manner directly or indirectly caused..." *Id.* The court in *Dillingham* found this language to be sufficiently broad to include an award of attorneys' fees for an action to establish a right to indemnification.

Northbrook agreed in the Guarantee clause of the Amendment of Lease to: defend, indemnify and save and hold harmless the Lessors, their successors in trust and assigns, from and against any loss, cost, damage or liability arising from any failure on the part of the Lessee so to pay, observe and perform such obligations and from and against any loss, cost, damage or liability arising from any failure on the part of Amfac, Inc., to observe and perform this guaranty, including in all cases reasonable attorney's fees and court costs ...

Amendment of Lease, at 3. The indemnification agreement in the guarantee is sufficiently broad so as to fall within the *Dillingham Shipyard* exception to the general rule. *See Dillingham,* 649 F.2d at 1328. Therefore, Trustees are entitled to recover from Northbrook their costs, expenses, and attorney's fees incurred in establishing their right to indemnification from Oahu Sugar/Northbrook.

Oahu Sugar agreed to "indemnify and hold the Lessors harmless from and against all claims and demands for loss or damage, including property damage, personal injury and wrongful death, arising out of or in connection with the use or occupancy of the demised premises..." and to reimburse Trustees for "all their costs and expenses including reasonable attorneys' fees incurred in connection with the defense of any such claims." Amendment of Lease, at 22. Further, Oahu Sugar agreed to "pay to the Lessors on demand, as incurred or at any time thereafter, all costs and expenses including reasonable attorneys' fees incurred by the Lessors in enforcing any of the Lessee's covenants herein contained ...." Amendment of Lease at 19. Oahu Sugar agreed to pay attorneys' fees if Trustees were required to litigate to enforce any of Oahu Sugar's covenants. The duty to indemnify the Lessor is a covenant of the lease, and therefore the Court finds that the agreement clearly provided for the payment of attorneys' fees for establishing the right to indemnification. Thus, Trustees are entitled to recover from Oahu Sugar their costs, expenses, and attorney's fees incurred in establishing their right to indemnification from Oahu Sugar/Northbrook under the holding of *Dillingham. See Id.*

Accordingly, the Court GRANTS Trustees' Motion for Summary Judgment as to Oahu Sugar/Northrop and DENIES Oahu Sugar/Northbrook's Counter–Motion for Summary Judgment as to an award of costs, expenses, and attorneys' fees incurred in establishing a right to indemnification.

### CONCLUSION

For the foregoing reasons, the Court DENIES Trustees' Motion for Summary Judgment and GRANTS Oahu/Northbrook's Motion for Summary Judgment as to Oahu Sugar/Northbrook's Duty to Indemnify Trustees for pre–1970 activities on the Property.

The Court GRANTS Trustees' Motion for Summary Judgment and DENIES Oahu Sugar/Northbrook's Counter–Motion for Summary Judgment as to Oahu Sugar/Northbrook's duty to indemnify Trustees for any environmental liability under CERCLA, HERL, negligence and strict liability for ultrahazardous activity arising from post–1970 activities on the Property.

The Court GRANTS Trustees' Motion for Summary Judgment and DENIES Oahu Sugar/Northbrook's Counter–Motion for Summary Judgment as to Oahu Sugar/Northbrook's duty to defend Trustees.

The Court DENIES Trustees' Motion for Summary Judgment as to an award of prejudgment interest.

The Court GRANTS Trustees' Motion for Summary Judgment as to Oahu Sugar/Northbrook's duty to reimburse for the costs, expenses, and attorney's fees for establishing Trustee's right to indemnification.

IT IS SO ORDERED.